**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON MCCOY,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 1:18-CV-04123-TJS** |
| | : | |
| **DETECTIVE KEENYA TAYLOR,** | : | |
| | : | |
| **Defendant.** | : | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. PRELIMINARY STATEMENT

Plaintiff Aaron McCoy respectfully submits this Opposition to Defendants' Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 and this Honorable Court's Policies and Procedures. Plaintiff holds that his constitutional rights were violated by Philadelphia Police Department, Detective Keenya Taylor. This claim stems from Plaintiff's arrest and incarceration for Rape and various crimes related to Sexual Assault. There are two causes of action in this matter, State Law Malicious Prosecution and 42 U.S.C. § 1983, Malicious Prosecution. The undisputed facts show that there was no probable cause for Plaintiff's arrest; Detective Taylor withheld critical and exculpatory information from the Magistrate; Detective Taylor embellished information in the affidavit of probable cause; that Detective Taylor acted with malice; and, that the criminal proceedings ended favorably for Plaintiff. Lastly, Detective Taylor is not entitled to qualified immunity in this case. For the reasons aforementioned, summary judgment should be denied in full.

## II. PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint with the Philadelphia County Court of Common Pleas on August 16, 2018. Defendants by and through their attorney removed the action to the United States District Court, Eastern District of Philadelphia on September 25, 2018. Defendants filed a Motion to Dismiss on October 3, 2018. Plaintiff filed an Amended the Complaint on October 19, 2018, (See Amended Complaint, hereto attached as **Exhibit "A"**); the Court denied Defendants Motion to Dismiss as moot. Defendants Answered the Complaint on November 2, 2018. Defendants filed a Motion for Summary Judgment on March 1, 2019.

## III. STATEMENT OF FACTS

On January 27, 2014, Plaintiff Aaron McCoy, a 33-year-old citizen of the United States, who at all times relevant, resided at 234 Widener Street, Philadephia, Pennsylvania, was falsely accused of sexual assault and related crimes by an individual hereinafter identified as L.H. More Specifically, on January 27, 2014, L.H. met with Defendant Keenya Taylor ("Taylor"), wherein she alleged she was a cohabitant with Plaintiff, identifying Plaintiff as her boyfriend and the father of her unborn child, notwithstanding the fact that L.H. was not a cohabitant of Plaintiff; was not then, nor ever, in a relationship with Plaintiff; nor has she ever been a cohabitant with Plaintiff or impregnated by Plaintiff. **Exhibit B.** L.H. stated to Defendant Taylor that she found out that she was pregnant (approximately December 2013) and told Plaintiff (who she identified as the father) and that as a result, she and Plaintiff began to frequently argue, which resulted in her not being in the mood for sex. Id. L.H. went on to state that on

January 25, 2014, while lying in bed with Plaintiff, Plaintiff forced her to engage in coitus by grabbing her and holding her down and that the Plaintiff also forced her to perform fellatio. Id. L.H. further stated that Plaintiff sexually assaulted her a second time on January 26, 2014, again in the bed she allegedly shared with Plaintiff. Id. L.H. stated that the second assault occurred similar to the alleged assault of January 25, 2014. Id. During her statement, L.H. purported that in addition to the violent sexual and physical assault allegedly committed by Plaintiff, she was held against her will and denied food for three days, further asserting she did not report the incidents because Plaintiff would have another person fight her. Id.

On January 27, 2014, L.H. underwent a Sexual Assault Forensic Examination. The examination was documented on a Sexual Assault Forensic Examination Form and provided to Taylor the same day or the next day. **Exhibit C.** During the examination, L.H. was asked several questions related to the assault allegation. The document revealed numerous inconsistencies to include:

a. The last time L.H. engaged in consensual intercourse [before the alleged assault] was in September 2013, which was with a sexual-partner she identified as "Stephen." Id. She and Stephen had anal sex, and he used a condom. Id.

b. L.H. claimed to be three months into a pregnancy with Plaintiff's child, yet she reported to the examiner that her last menstrual cycle was November 2013 and her last sex partner was someone other than Plaintiff in September 2013. Id.

L.H. informed Taylor that she suffered injuries to her back, neck, and ankle from the alleged assault. **Exhibit B.** The examiner affirmatively noted that no injuries were observed anywhere on L.H.'s body during the physical examination, to include her neck, back, and lower extremities. **Exhibit C.**

On April 3, 2014, sixty-six (66) days after L.H. provided her statement, Taylor swore and affirmed a criminal complaint charging Plaintiff with rape, forcible compulsion, IDSI forcible compulsion, sexual assault, unlawful restraint/serious bodily injury, indecent assault forcible compulsion, simple assault, reckless endangerment of another person, false imprisonment and aggravated assault. **Exhibit D**. At no time did Taylor perform any additional investigative work, aside from the statement made by L.H., to ascertain or determine credibility or probability of the alleged assault(s). **Exhibit E**, KT 90:16-19. Taylor withheld contradicting and exculpatory information and information doubting the veracity of L.H. that was evident from the Sexual Assault Forensic Examination Form. Id., KT 66:23 – 67:01. Said information would have required the neutral party responsible for issuing a warrant to evaluate all of the facts related to the allegation for a determination of probable cause and would have reasonably concluded that no probable cause existed.

On June 19, 2014, 143 days after L.H.'s complaint, Plaintiff turned himself into the 35th District. **Exhibit F** AM 30:02.

Plaintiff was held at the 35th District for eight (8) hours. Plaintiff was then transferred to the Special Victims Unit, where he was held for an additional fifteen (15) hours. Plaintiff was subsequently transferred to State Road, where he was detained in custody with the Philadelphia Department of Corrections for thirteen (13) months. **Exhibit A.**

All charges were nolle prosequi on August 29, 2016, when L.H. failed to appear for a court proceeding. **Exhibit G.**

## IV. STANDARD ON SUMMARY JUDGMENT

Pursuant to F.R.C.P. 56(a):

> . . . The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . .

As such, where "there is no genuine dispute as to any material fact, and the movant shows entitlement to judgment, that judgment should issue as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248 (1986). "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Oquendo v. Bettcher Industries Inc., 939 F.Supp. 357, 361 (D.N.J. 1996)(quoting Anderson, 477 U.S. at 248). In weighing the evidence presented by the parties, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." Anderson, 477 U.S. at 255.

The burden of establishing the non-existence of a "genuine issue" is on the party moving for summary judgment. Aman v. Court Furniture Rental Corp., 85 F.3d 10, 74, 1080 (3d Cir. 1996). The moving party must satisfy its burden either by "producing the evidence showing the absence of a genuine issue of material fact" or by "showing – that is, pointing out to the district court – that there is an absence of evidence to support the

non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986).

If the party seeking summary judgment makes this showing, it is left to the non-moving party to "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 457 U.S. 574, 586 (1986). In order to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. Additionally, "when opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must identify those facts of record which would contradict the facts identified by the movant." Corliss v. Varner, 247 Fed. App'x 353, 354 (3d Cir. 2007)(quoting Port Authority of New York and NJ v. Affiliated F.M. Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002).

The Court's role in deciding the merits of the party's motion for summary judgment is not to evaluate the evidence and decide the truth of the matter, but instead to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the Court. Big Apple BMW, Inc. v. BMW of N.Am. Inc., 974 F.2d. 1358, 1363 (3d Cir. 1992).

In sum, whereas here, the record reveals no genuine issue of material fact, judgment must be entered in favor of the deserving party in light of the law and undisputed facts. Iberia Foods Corp. v. Romeo, 150 F.3d. 298, 302 (3d Cir. 1998).

## POINT I

### DEFENDANT TAYLOR ADMITTED THAT SHE WITHHELD CRITICAL INFORMATION AND EMBELLISHED FACTS IN THE STATEMENT OF PROBABLE CAUSE.

"To sustain a § 1983 malicious prosecution claim under the Fourth Amendment, there must be a seizure or deprivation of liberty effected pursuant to legal process. See Albright v. Oliver, 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (3d Cir.1995). Plaintiff's obligation to go to court and answer the charges against him constitute a sufficient restraint of liberty or "seizure" to satisfy this requirement. See Gallo v. City of Phila., 161 F.3d 217, 224–25 (3d Cir.1998)." Vassallo v. Timoney, 00-84, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001), aff'd, 40 Fed. Appx. 734 (3d Cir. 2002). A defendant in a civil rights action must have personal involvement in the alleged wrongs. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Id. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. Compare Boykins v. Ambridge Area School District, 621 F.2d 75, 80 (3d Cir.1980) (civil rights complaint adequate where it states time, place, persons responsible); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978) (same). Id.

Here, Taylor was assigned to investigate the allegation made by L.H. concerning Plaintiff. **Exhibit E,** KT 40:14-19. Taylor took a statement from L.H where she recorded L.H.'s responses in writing. Id. KT 40:1-13. According to Taylor, there was only one interview and one statement taken from L.H. **Exhibit B,** KT 72:03-07. L.H. told Taylor that

she was sexually assaulted by the Plaintiff on January 26, 2014. Id. The following is an excerpt of the statement provided by L.H.

Q. Can you tell [me] what happened that brings you to the Special Victims Unit?
**A. Maybe about a month ago I found out that I was pregnant I decided to go and tell the person I am pregnant by about it.** Once I told him we began to argue a lot. Then the argument turned in the physical fights. Then physical fights were getting more frequent. Then it turned into something more [sic]. He started to try to have sexual intercourse with me against my will. It started with him asking for sex and my not being in the mood because we were arguing a lot. Then he started to force me to have sexual intercourse with him.
Q. What is the name of the person that his forcing you to have sex?
A. Aaron McCoy 26/8/M.
Q. What is your relationship with Mr. McCoy?
A. At the time we were together in a relationship, and he is my baby's father.
Q. Do you have other children by Mr. McCoy?
A. No, I speaking of the baby I am currently carrying.
Q. When was the last time that Mr. McCoy forced you to have sex?
A. Yesterday 01-26-14.
Q. Where and when did the rape occur?
A. It happened at the house (234 Widener Street) at around 8:00 PM.

Id., page 2 [Emphasis added].

**Q. How often does Mr. McCoy, forced you to engage sexual intercourse against your will?**
**A. It's been only these two times that I can remember.**
Q. When did the first sexual assault occur?
A. About two days ago on 01-25-14.
Q. Did you report the first time that he sexually assaulted you to the police?
**A.** No, **he would not let me out of the house. I had to go three days without eating, and I am three months pregnant.** He told me if I told he was going to get his best friend to fight me. I am not a fighter.

Id., page 3 [Emphasis added].

**Q. Do you have any injuries from the sexually and physical assaults?**
**A. My ankle they had to· wrap it, back and my neck hurt.**
Q. Are you willing to get a sexual assault examination, today?
A. Yes.
Q. Is there anything else you wish to tell me about this incident?
A. No.

Interview ended on 01-27-14 at 4:10 am.

Id., page 4 [Emphasis added].

Taylor stated that L.H. was examined by the sexual assault forensic examination team who provided a report. KT 48:7-10. During the examination, L.H. was asked questions, and her responses were recorded on the Sexual Assault Forensic Examination Form. **Exhibit C**. L.H. told the examiners that she has a history of mental illness including post-traumatic stress disorder, depression and bipolar. Id., page 1. Although L.H. told Taylor that she was pregnant with Plaintiff's child, she informed the examiners that her last date of consensual intercourse was September 2013 with a friend she identified as Stephan and that intercourse was anal with a condom. Id. L.H. told Taylor that she was three months pregnant, but she told the examiners that her last menstrual period was on November 11, 2013. Id. L.H. also told Taylor that she was injured during the alleged assault, but the examiners did not note any injuries and checked the corresponding box for any photographs. Id.

Taylor noted that she received the Sexual Assault Forensic Examination Form on January 27, 2014, or the next day. Exhibit E, KT 48:7-13. Taylor stated that when she saw the aforementioned inconsistencies, it did not raise any concerns for her. Id. KT 52:18-20. Taylor also admitted that although L.H. told her during her statement that she

was prevented from leaving the house, she also stated that she did, in fact, leave the house. Id. KT 58:7-23. Taylor admitted that with respect to the statements L.H. provided to her, and the information she received from the examiners, one of the statements had to be false. Id. KT 60:6-9. Taylor testified that if she reviews the examination form to make a creditability assessment of the complainant. Id. KT 38:13-16. If she finds that the complainant is not credible, she informs the district attorney, and they would decline to charge. Id. KT 38:6-12. Taylor provided the following concerning the veracity of L.H. in this case:

> Q. And with respect to the term "credibility," what does that mean to you?
>
> A. Whether it makes sense. There are some things that just doesn't make sense.
>
> Q. And with respect to that broader, or I should say more narrow understanding that it doesn't make sense, do these two statements, the statement she gave to you and the statement she gave to the nurse, make sense looking at them side by side?
>
> A. They definitely -- I almost don't have words to say. They're definitely different from each other.
>
> Q. And that's clear. But my question is, on your understanding of making sense and credibility, does -- do these two statements make sense as looking at them side by side today?
>
> A. I guess she couldn't have been pregnant. I don't know.
>
> Q. I understand but my question is, these 10 two statements side by side, do they make sense based on your definition?
>
> A. No.

Id. KT 61:18 – 62:12.

Taylor admitted that L.H. was not truthful in her statements:

> Q. And you expected the statement she gave you to be the truth, correct?

A. Yes.

Q. And in this instance, we find that one of these two things couldn't possibly be true because they're in conflict with each other, correct?

A. Yes.

Q. And you reviewed both these documents before preferring charges against Mr. McCoy, correct?

A. Yes.

Q. And it's clear that somewhere she's not being truthful; is that correct?

A. Yes.

Id. KT 65:01-15.

Q. Did you see these two things in conflict before charging Mr. McCoy?

**A. I looked at the medical records. I didn't see the conflict if -- I didn't see the conflict. I'm sorry.**

Q. You didn't see it then?

A. Yes.

Q. You see it now, though?

A. Yes.

Id. KT 65:20 - 66:5 [Emphasis added].

Taylor stated that she did not tell the Magistrate that L.H. provided two conflicting statements when she submitted a sworn affidavit of probable cause. Id. KT 66:23 – 67:01. Furthermore, Taylor admitted to attributing information in the affidavit of probable cause to originating with L.H. but when asked to identify where L.H. provided the information she referenced Taylor could not.

Q. And inside -- it continues: Inside the special victim’s unit. The complainant stated that on 1/26/2014 she was inside 234 Widener Street, Philadelphia, PA, with her live-in boyfriend Aaron McCoy, offender. The complainant stated that she and the offender were in

> bed together when the offender asked her to engage in sex with her. The complainant told the offender no, and no is in quotes. The offender then grabbed the complainant and forced her to engage in oral and vaginal sex with him against her will. The complainant then told the assigned that after the assault, the offender fell asleep and the complainant left the residence, and the police were notified. The complainant also told the assigned that she is pregnant, and the offender is the father of her unborn child. Correct?
>
> A. Yes.
>
> Q. Now, this sentence here, before I get into the more issues here: **The complainant then told the assigned that she -- that after the assault, the offender fell asleep and the complainant left the residence, and the police were notified. That's not in her statement anywhere, is it?** Take a moment and look at the statement which is Taylor-1, which is tab 7. Take your time; I'll wait.
>
> A. (Witness reviewing document). **No.**
>
> Q. So I asked you earlier was there some pre-interview statement given, and your response was no; wasn't that correct, that this is the only statement she provided?
>
> A. Yes.
>
> Q. So where then did she tell you, *the complainant then told the assigned that after the assault, the offender fell asleep and the complainant left the residence*, and the police were notified; when was that information provided to you?
>
> A. I don't remember.

Id. KT 72:03-15, (See also, Affidavit of Probable Cause, hereto attached as **Exhibit "H"**).

## POINT II

### DEFENDANT TAYLOR IS LIABLE FOR MALICIOUS PROSECUTION BECAUSE SHE KNOWINGLY OR WITH RECKLESS DISREGARD FOR THE TRUTH, CONCEALED EXCULPATORY EVIDENCE.

A police officer may be liable for malicious prosecution only if he knowingly or with reckless disregard for the truth concealed exculpatory evidence from or provided false or misleading reports to the prosecutor or otherwise interfered with the prosecutor's ability

to exercise independent judgment. See Sanders v. English, 950 F.2d 1152, 1162–64 (5th Cir.1992); Barlow v. Ground, 943 F.2d 1132, 1136–37 (9th Cir.1991), cert. denied, 505 U.S. 1206, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992); Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir.1990); Kim v. Gant, 1997 WL 535138, *4–5 (E.D.Pa. Aug.15, 1997). Vassallo v. Timoney, 00-84, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001), aff'd, 40 Fed. Appx. 734 (3d Cir. 2002).

Defendants cited Stango for the proposition that a police officer cannot be held liable for a malicious prosecution claim because it is a prosecutor, not a police officer, who initiates criminal proceedings against an individual. Stango v. Rodden, CIV. A. 00-CV-5709, 2001 WL 1175131, (E.D. Pa. Aug. 21, 2001). However, the Stango court also stated that **a police officer might be held to have 'initiated' a criminal proceeding if she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion, [because] ... [i]n such cases, an intelligent exercise of the ... [prosecutor's] discretion becomes impossible**, and prosecution based on the false information is deemed procured by the person giving the false information." Id. (citations omitted); See also Marcia v. Micewski, Civ. No. 97-5379, 1998 U.S. Dist. LEXIS 13243, at 28 (E.D.Pa. Aug. 24, 1998). Id. (emphasis added).

Under Pennsylvania law, the elements of a malicious prosecution claim are that the defendant (1) instituted the proceedings (2) without probable cause with (3) actual malice and (4) that the proceedings terminated in favor of the plaintiff. See Griffiths v. CIGNA Corp., 988 F.2d 457, 463 (3d Cir.1993); Lee v. Mihalich, 847 F.2d at 69–70; Kelley v. General Teamsters, Local Union 249, 518 Pa. 517, 544 A.2d 940, 941 (1988). Malice has been defined as "ill will in the sense of spite, lack of belief by the actor himself in the

propriety of the prosecution, *or* its use for an extraneous improper purpose." Lee v. Mihalich, 847 F.2d at 70 (emphasis added). **Malice may be inferred from the absence of probable cause**. Griffiths v. CIGNA, 988 F.2d at 463; Kelley, 544 A.2d at 941; Hugee v. Pennsylvania R. Co., 376 Pa. 286, 101 A.2d 740, 743. (emphasis added). Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense. Griffiths v. CIGNA, 988 F.2d at 464; Bruch v. Clark, 352 Pa.Super. 225, 507 A.2d 854, 857 (1986). Lippay v. Christos, 996 F.2d 1490, 1502 (3d Cir. 1993).

Here, Taylor admitted that for sixty-six days prior to charging Plaintiff, she had in her possession conflicting information from L.H., concerning the alleged sexual assault but failed to analyze the two statements and see that they were in obvious conflict. **Exhibit E**, KT 65:20 - 66:5 The conflicts with the information provided by L.H. were significant and cast serious doubts on the veracity of L.H. Furthermore, Taylor failed to inform the Magistrate of the conflicting statements. Id. KT 85:09-12.

## POINT III

### DEFENDANT TAYLOR ACTED WITH MALICE BY WITHHOLDING CRITICAL INFORMATION AND CHARGED PLAINTIFF WITHOUT PROBABLE CAUSE.

Additionally, Taylor added information, i.e. *the complainant then told the assigned that after the assault, the offender fell asleep and the complainant left the residence* to the affidavit of probable cause that she cannot state where the information came from. **Exhibit E**, KT 66:23 – 67:01. This fact in conjunction with the obviously false statements made by L.H. destroys the veracity of the affidavit and nullifies the existence of probable cause. "[N]o Warrants shall issue, but upon probable cause, supported by Oath or

affirmation . . . ." Judge Frankel, in United States v. Halsey, 257 F.Supp. 1002, 1005 (S.D.N.Y.1966), aff'd, Docket No. 31369 (CA2, June 12, 1967) (unreported). In challenging the determination that probable cause to arrest existed, Plaintiff has the burden of showing, by a preponderance of the evidence, that (1) Defendant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions in her affidavit of probable cause that creates a falsehood in applying for an arrest warrant; and (2) such statements or omissions are material to the finding of probable cause. See Franks v. Delaware, 438 U.S. 154, 171–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); Sherwood, 113 F.3d at 399. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000).

"[W]hen, the Fourth Amendment, demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a *truthful* showing" (emphasis in original). Franks v. Delaware, 438 U.S. 154, 164–65, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667 (1978).

> It is established law, see Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933); Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 1249–1250, 2 L.Ed.2d 1503 (1958); Aguilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1513–1514, 12 L.Ed.2d 723 (1964), that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter.

Id.

> **Because it is the magistrate who must determine independently whether there is probable cause**, Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948); Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697 (1960), **it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement**, were to stand beyond impeachment.

Id.

> The requirement that a warrant not issue "but upon probable cause, supported by Oath or affirmation," would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile.

Franks, 438 U.S. at 168.

"The notion that there may be incorrect or even deliberately falsified information presented to a magistrate in the course of attempting to obtain a warrant does not render the proceeding before a magistrate any different from any other factfinding procedure known to the law." Franks, 438 U.S. supra, 181.

Here, Taylor's included statements in the affidavit that she cannot attribute to originating from L.H., thereby severely negating the accuracy of the affidavit of probable cause. **Exhibit E**, KT 66:23 – 67:01, See also, **Exhibit H**. Even if Taylor believed that the conflicting statements were not enough to conclude that L.H. provided false information, Taylor had an obligation to provide the obvious material statements to the Magistrate when she sought the arrest warrant. Furthermore, Taylor did not tell the Magistrate that she made no attempts to verify any of the information that L.H. provided:

> Q. Right. Okay. Did you tell the magistrate that you did not verify any of the information she provided?
> A. No.

KT 85:09-12

> Q. Did you tell the magistrate that you did not verify that LH resides at 239 Widener Street?
> A. No, I did not.
> Q. Did you tell the magistrate that you did not have any contact with the alleged offender?
> A. I did not.
> Q. Did you tell the magistrate that you did not preserve the crime scene, the alleged crime scene?

A. No, I did not.

KT 85:22 – 86:09

**POINT IV**

**THE PROCEEDINGS TERMINATED FAVORABLY FOR PLAINTIFF, THUS SATISFYING THE FOURTH ELEMENT IN A MALICIOUS PROSECUTION CLAIM .**

Defendant argued that the proceedings did not terminate favorably for Plaintiff because there is no evidence in the record that the criminal proceedings terminated for reasons related to Plaintiff's innocence. However, the Third Circuit of Appeals held that in a malicious prosecution claim, the favorable termination element is satisfied with a nolle prosequi provided that the Plaintiff did not receive anything in consideration. Malcomb v. McKean, 535 Fed. Appx. 184, 187 (3d Cir. 2013).

> [A] grant of nolle prosequi is insufficient to support a claim of malicious prosecution only in circumstances where the accused herself enters into a compromise with the prosecution in which she surrenders something of value to obtain the dismissal," or in cases in which "the accused formally accepts the grant of nolle prosequi in exchange for her knowing, voluntary release of any future claims for malicious prosecution." Hilfirty v. Shipman, 91 F.3d 573, 579–80 (3d Cir.1996) *disapproved of on other grounds by* Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 794 (3d Cir.2000); see also Kossler, *187 564 F.3d at 187 **(explaining that the "formal abandonment of the proceedings by the public prosecutor" may satisfy the favorable termination prong** (quotation marks omitted)).

Id. [Emphasis added].

> **Our precedent is clear. A nolle prosequi disposition is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain that outcome.**

Id. 535 Appx. at 187. [Emphasis added]

There is no evidence that Plaintiff obtained the nolle prosequi disposition through either of avenues outlined in Malcomb; thus his criminal case terminated favorably.

## POINT V

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE INCOMPETENCE IS NOT PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY.

"Qualified immunity shields government officials from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine is intended "to mitigate the social costs of exposing government officials to personal liability," Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C.Cir.1998), by giving officials "breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. Al–Kidd, 563 U.S. 731, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). **Properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law**." Id. (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). George v. Rehiel, 738 F.3d 562, 571–72 (3d Cir. 2013)[Emphasis added].

There are two steps in the qualified immunity analysis. The first inquiry asks whether the defendant's conduct violated the plaintiff's constitutional rights. Curley v. Klem, 499 F.3d 199, 206 (3d Cir.2007). If the plaintiff's constitutional rights have been violated, the Court proceeds to the second inquiry: "whether the right that was violated was clearly established, or, in other words, 'whether it would be clear to a reasonable

officer that his conduct was unlawful in the situation he confronted.' " Id. (quoting Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)); see also Blaylock v. City of Phila., 504 F.3d 405, 411 (3d Cir.2007) ("The qualified immunity standard is one of 'objective legal reasonableness.'" (quoting Harlow, 457 U.S. at 816-17.)). Lozada v. Wilmington Dep't of Police, CIV.A. 07-663, 2008 WL 1994870, at *6 (E.D. Pa. May 5, 2008). A § 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution. Torres v. McLaughlin, 163 F.3d 169, 173 (3d Cir. 1998). The availability of qualified immunity "turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate criminal prosecution." Palma v. Atlantic County, 53 F.Supp.2d 743, 769 (citing Orsatti, 71 F.3d at 483) (additional citations omitted).

In the instant case, Taylor filed charges against Plaintiff without objective evidence of probable cause, which is in violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. Taylor is a 25-year veteran of the Philadelphia Police Department. KT 9:13-18. Taylor has been assigned to the Special Victim Unit for 20 years. KT 10:10-14. Despite her long service history, Taylor admitted to her incompetence by acknowledging that she had the conflicting information from L.H. in her possession for sixty-six days prior to charging Plaintiff, she failed to analyze the two statements; thus, she is not entitled to qualified immunity. **Exhibit E**, KT 65:20 - 66:5.

**POINT VI**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE STATE LAW MALICIOUS PROSECUTION CLAIM SHOULD ALSO FAIL FOR MANY OF THE AFOREMENTIONED REASONS.**

A district court may have jurisdiction over federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), and over his state law claims pursuant to 28 U.S.C. § 1367(a). Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 786 (3d Cir. 2000). Under Pennsylvania law, in order to sustain a cause of action for malicious prosecution, the plaintiff must prove that the defendant instituted proceedings against the plaintiff without probable cause and with malice and that the proceedings were terminated in favor of the plaintiff. Kelley v. General Teamsters, Chauffeurs, & Helpers, Local Union 249, 544 A.2d 940 (Pa. 1988).

To hold an individual liable on a § 1983 claim, a plaintiff must prove a deprivation of a right guaranteed by the Constitution or the laws of the United States by a defendant acting under color of law. Tunstall v. Office of Judicial Support of Court of Common Pleas of Delaware County, 820 F.2d 631 (3d Cir.1987) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). Pettit v. Namie, 931 A.2d 790, 801–02 (Pa. Commw. Ct. 2007). There are two essential elements necessary to establish a claim under 42 U.S.C.1983: the conduct complained of was committed by a person acting under color of state law; and, the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Jones v. City of Phila., 890 A.2d 1188 (Pa.Cmwlth.), appeal denied, 589 Pa. 741, 909 A.2d 1291 (2006). Id.

As stated in greater detail above, Plaintiff has shown that all of the elements for a State law claim for malicious prosecution are present in the instant matter. There is no

doubt as to the two essential elements in a § 1983 action. (1) Taylor was at all times relevant to this case, acting under the color of state law as a sworn law enforcement officer for the City of Philadelphia. (2) Taylor's conduct as described more fully above, deprived Plaintiff of his rights guaranteed under the Fourth Amendment of the United States Constitution and Article I § 8 of the Pennsylvania Constitution.

Furthermore, Pennsylvania courts have held that in some limited instances, the duty to the public may become a duty to the individual if the police develop a special relationship to an individual that differs from that of the police to the general public. For example, police protection of citizens may become a private duty under special circumstances. See Melendez v. City of Philadelphia, 320 Pa.Super. 59, 64, 466 A.2d 1060, 1063 (1983); Chapman v. City of Philadelphia, 290 Pa.Super. 281, 283, 434 A.2d 753, 754 (1981); Berlin v. Drexel University, supra at 328. See also Miller v. United States 561 F.Supp. 1129, 1134 (E.D.Pa.1983), aff'd. sub nom appeal of Miller, 729 F.2d 1448 (3rd Cir.1984). Caldwell v. City of Philadelphia, 517 A.2d 1296, 1299–300 (Pa. Super. Ct. 1986). This "special relationship" may allow the police to be liable for negligent performance of their duty where otherwise liability would not exist. Id.

Here, for sixty-six days, Taylor had in her possession exculpatory evidence that L.H. was not truthful in her statements prior to charging Plaintiff with crimes he did not commit. Taylor ignored or by astonishing incompetence failed to see the obvious conflicting statements. Furthermore, given the conflicting statements, Taylor did nothing to verify the veracity of L.H. **Exhibit B**, KT 85:09-12.

**CONCLUSION**

Based upon the foregoing statements of fact and law, summary judgment for Defendant should be denied on all claims.

Date: __March 14, 2019__

Respectfully submitted,

JACOBS & BARBONE, P.A.

*// Timothy C. Alexander //*____

Timothy C. Alexander, Esquire
Attorney ID 315716
Jacobs & Barbone, P.A.
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
talexander@jacobsbarbone.law
Attorneys for Aaron McCoy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **AARON MCCOY,** | : | |
| **Plaintiff,** | : | |
| | : | **Civil Action** |
| **v.** | : | **No. 1:18-CV-04123-TJS** |
| **DETECTIVE KEENYA TAYLOR,** | : | |
| **Defendant.** | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the date below, the Plaintiff's Opposition to Defendant's Motion for Summary Judgment was filed via the Court's electronic filing system and is available for downloading by all parties of record.

Date: __March 14, 2019__

Respectfully submitted,

*// Timothy C. Alexander //*____

Timothy C. Alexander, Esquire
Attorney ID 315716
Jacobs & Barbone, P.A.
1125 Pacific Avenue
Atlantic City, New Jersey 08401
(609) 348-1125
talexander@jacobsbarbone.law
Attorneys for Aaron McCoy