IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AARON MCCOY | : CIVIL ACTION |
| | : |
| v. | : |
| | : |
| DETECTIVE KEENYA TAYLOR, | : |
| DETECTIVE/SERGEANT JOSEPH | : |
| JENKINS, POLICE OFFICER WALTER | : |
| BOSAK, CITY OF PHILADELPHIA, and | : |
| JOHN AND/OR JANE DOE POLICE | : |
| PERSONNEL (1-5) | : NO. 18-4123 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                          **June 20, 2019**

This § 1983 malicious prosecution action demonstrates how a man accused of a heinous crime and who spent 13 months in jail before the charges were dismissed cannot obtain relief from the police detective who obtained a search warrant based on her affidavit of probable cause. Despite the detective's failure to include all available information bearing on the alleged victim's credibility, the affidavit supplied probable cause. As a result, plaintiff Aaron McCoy cannot establish an essential element of his cause of action.

McCoy brings federal and state malicious prosecution claims against Philadelphia Police Detective Keenya Taylor arising from his arrest and prosecution for raping Lolita Henagan.[1] After Henagan reported that McCoy had raped her, Taylor submitted an

---

[1] In his Amended Complaint, McCoy also sued Detective Sergeant Joseph Jenkins, who approved Taylor's affidavit of probable cause, and Philadelphia Police Personnel John and/or Jane Doe (1-5). Am. Compl. ¶ 1, ECF No. 5. The parties stipulated to Jenkins' dismissal with prejudice on March 18, 2019. Stip. of Dism., ECF No. 17. In his original Complaint, McCoy named the City of Philadelphia and Police Officer Walter Bosak as defendants, but did not do so in the Amended Complaint.

affidavit of probable cause that resulted in McCoy's arrest and charges against him. The case was *nolle prossed* after Henagan failed to appear at trial. McCoy sued, alleging that Taylor initiated the proceedings against him maliciously and without probable cause.

Moving for summary judgment, Taylor argues that the undisputed facts establish that probable cause existed for McCoy's arrest and she did not act with malice. She argues that dismissal of the criminal case without prejudice was not a termination in McCoy's favor. She also asserts qualified immunity. Opposing the motion, McCoy maintains that Taylor maliciously withheld facts and embellished others in the affidavit of probable cause and that the *nolle prosequi* of the charges was a favorable termination. He maintains that qualified immunity does not insulate Taylor from her own admitted incompetence.

Considering the omitted facts together with the existing facts in the affidavit and disregarding the ones that Taylor could not attribute, a reasonable jury could not conclude that there was no probable cause to arrest McCoy. Therefore, we shall grant Taylor's motion.

**Background**

McCoy was arrested and charged with rape and related crimes based solely upon Henagan's uncorroborated complaint. After McCoy was held in jail awaiting trial for 13 months, the charges were *nolle prossed*.

On January 26, 2014, at approximately 11 p.m., Henagan reported to the police an alleged domestic incident at 234 Widener Street involving McCoy.[2] At 3:37 a.m. the

---

[2] Def.'s Stmt. of Undisputed Material Facts (DSUMF) ¶ 1, ECF No. 15-1; Pl.'s Resp. to Def.'s Stmt. of Undisputed Material Facts (PRDSUMF) ¶ 1, ECF No. 16-4.

following morning, Taylor interviewed Henagan at the Special Victims Unit.[3] Henagan told Taylor that McCoy, her boyfriend and father of her unborn child, had sexually assaulted her on January 25 and 26 at the Widener Street property.[4] Henagan identified McCoy as her assailant from a photograph.[5] She stated that after she informed McCoy that she was pregnant,[6] they began having arguments that frequently turned into physical fights.[7] According to Henagan, during the fights, McCoy attempted to force her to have sex.[8]

Henagan indicated that the January 25 assault occurred during a three-day period when McCoy confined her to the house and would not let her eat.[9] She maintained that her confinement prevented her from reporting the assault that day.[10] She also stated that she did not report the assault in her initial contact with police on January 26 because she was scared and not from the area.[11]

According to Henagan, the January 26 assault occurred after she rejected McCoy's advances. She related that she was lying in bed with McCoy around 8 p.m.

---

[3] DSUMF ¶ 2; PRDSUMF ¶ 2.

[4] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2-3, ECF No. 15-3. When Taylor asked Henagan how often McCoy sexually assaults her, she responded, "It's been only these two times that I can remember." Investigation Interview Rec. 3.

[5] DSUMF ¶ 4; PRDSUMF ¶ 4; McCoy Photo., ECF No. 15-4.

[6] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2.

[7] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2.

[8] Investigation Interview Rec. 2.

[9] *Id.* 3.

[10] *Id.*

[11] *Id.*

when he wanted to have sex with her.[12] She asked him to stop and then begged him to stop.[13] Despite her protestations, he raped her vaginally.[14] McCoy then grabbed the back of her head and forced her to perform oral sex on him.[15] Henagan did not know if McCoy wore a condom during the assault.[16] She claimed that McCoy hurt her back and neck, and "they" had to wrap her ankle.[17]

After Henagan was interviewed by Taylor, she was examined at the Philadelphia Sexual Assault Response Center (Response Center) at approximately 5:00 a.m. on January 27.[18] She told the examiner that McCoy had grabbed her by the neck, pushed her backwards onto the bed, and raped her vaginally while holding her down with one hand on her neck.[19] She stated that McCoy had ejaculated.[20] She did not know if he was wearing a condom.[21] She also claimed that McCoy had grabbed her by the hair and

---

[12] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2. McCoy also told Taylor that McCoy "pushed [her] down on the bed . . . ." Investigation Interview Rec. 2.

[13] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2.

[14] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2-3.

[15] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 2-3.

[16] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 3.

[17] DSUMF ¶ 3; PRDSUMF ¶ 3; Investigation Interview Rec. 3.

[18] Phila. Sex. Assault Resp. Cntr. Sex. Assault Forensic Exam. Form (Sex. Exam.) 2, ECF No. 15-5.

[19] *Id.* 4.

[20] *Id.*

[21] *Id.*

forced her to perform oral sex on him.[22] A comprehensive physical examination revealed no visible injuries.[23] Consequently, no photographs were taken.[24]

Henagan indicated that she was three months pregnant and had her last period in November 2013.[25] She stated that her last consensual sexual intercourse was anal with a condom in September 2013.[26]

Taylor received the Response Center's report later that day or the next day.[27] After a delay of six weeks, she submitted a draft affidavit of probable cause with a recommendation that charges be filed to the Philadelphia District Attorney's Office.[28] On April 3, 2014, she presented a probable cause affidavit to a magistrate, seeking a warrant for McCoy's arrest on charges of rape, involuntary deviate sexual intercourse, sexual assault, and various misdemeanors.[29] Specifically, the affidavit stated:

> The Complainant a twenty-one year old female stated the following in summary to the assigned on 1-27-2014 inside the Special Victims Unit. The Complainant stated that on 1-26-2014 she was inside 234 Widener Street (Phila. Pa.) with her live-in boyfriend Aaron Mccoy (Offender). The Complainant stated that she and the Offender was [sic] in bed togeather [sic] when the Offender asked her to engage in sex with her [sic]. The Complainant told the Offender "No". The Offender then grabbed the Complainant and forced her to engage in oral and vaginal sex with him against her will. The Complainant then told the Assigned that after the assault the

---

[22] *Id.* 5.

[23] *Id.* 7-8.

[24] *Id.* 11.

[25] *Id.* 2, 11.

[26] *Id.* 2.

[27] Taylor Dep. Tr. 48:7-16, ECF 16-1, Ex. E.

[28] DSUMF ¶ 7; PRDSUMF ¶ 7; Taylor Dep. Tr. 107:4-13, ECF 15-8.

[29] DSUMF ¶¶ 8-9; PRDSUMF ¶¶ 8-9; Aff. of Prob. Cause, ECF 15-10.

5

> Offender fell asleep and the Complainant left the residence and the police were notified. The Complainant also told the Assigned that she is pregnant and the Offender is the father of her unborn child.[30]

Taylor did not corroborate the information Henagan had given her that she included in the affidavit.[31] She had no further contact with Henagan after the January 27, 2014 interview.[32] At her deposition, Taylor could not identify where she had obtained the information that Henagan left the residence and contacted police after McCoy had fallen asleep.[33] At no time did she contact McCoy.

On April 3, 2014, based on Taylor's affidavit, a magistrate signed the arrest warrant.[34] McCoy surrendered to police on June 19, 2014.[35] On October 9, 2014, after a preliminary hearing at which Henagan testified, McCoy was held for trial on all charges.[36] When Henagan later failed to appear at the trial, the case was *nolle prossed* without prejudice.[37]

---

[30] DSUMF ¶ 10; PRDSUMF ¶ 10; Aff. of Prob. Cause.

[31] Taylor Dep. Tr. 85:9-12, ECF 16-1.

[32] *Id.* 80:1-81:3.

[33] *Id.* 72:8-21.

[34] DSUMF ¶ 12; PRDSUMF ¶ 12; Warrant of Arrest, ECF 15-9.

[35] DSUMF ¶ 13; PRDSUMF ¶ 13; McCoy Dep. Tr. 31:1-15, ECF 15-11; PPD Arrest Rpt. 2, ECF 15-12.

[36] DSUMF ¶¶ 17-19; PRDSUMF ¶¶ 17-19; *Commonwealth v. McCoy*, MC-51-CR-0020604-2014 at 1-3, ECF 15-13.

[37] DSUMF ¶ 20; PRDSUMF ¶ 20; *Commonwealth v. McCoy*, CP-51-CR-0011543-2014 at 11, ECF 15-15.

## Standard of Review

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## Analysis

To establish a Fourth Amendment claim of malicious prosecution under § 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding against him; (2) the criminal proceeding ended in his favor; (3) the proceeding was initiated without

7

probable cause; (4) the defendant acted maliciously or for a purpose other than bringing him to justice; and (5) he suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009) (citing *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003)). To establish a claim of malicious prosecution resulting in a criminal proceeding under Pennsylvania law, a plaintiff need not show the fifth element, a seizure consistent with the Fourth Amendment. *Id.* at 186 n.2 (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000)).

McCoy cannot establish the third element, the absence of probable cause. The undisputed facts show that probable cause existed to arrest McCoy.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990)). The issue is not McCoy's actual innocence or guilt, but rather whether the arrest was supported by probable cause. *See Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005).

Applying a "totality-of-the-circumstances approach," and viewing all facts, not just those favorable to the non-moving party, we ask whether any reasonable jury could conclude that "those facts, considered in their totality in the light most favorable to the non-moving party, did not demonstrate a 'fair probability' that a crime occurred." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016).

Whether probable cause existed is a factual determination for a jury. *Dempsey*, 834 F.3d at 468 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995)). However, when the evidence, viewed in favor of the non-moving party, "reasonably would not support a contrary factual finding," a court may conclude that probable cause existed as a matter of law. *Id.* (quoting *Sherwood*, 113 F.3d at 401); *Merkle*, 211 F.3d at 788-89. In other words, if a reasonable jury could not conclude that there was a lack of probable cause, the defendant is entitled to summary judgment.

Typically, an arrest warrant establishes probable cause. Nevertheless, despite the existence of an arrest warrant, a plaintiff may establish a lack of probable cause by showing (1) an officer "knowingly and deliberately, or with a reckless disregard for the truth made false statements or omissions that create[d] a falsehood by applying for a warrant;" and (2) the statements or omissions were "material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quotations omitted). An omission is made with reckless disregard if an officer withholds something that "any reasonable person" would know is "the kind of thing the judge would wish to know." *Id.* at 788.

McCoy contends that Taylor "withheld critical information and embellished facts in the affidavit of probable cause."[38] He points to Henagan's statements to the sexual assault examiner that before the alleged rapes she last had sex, anally and with a condom, in September 2013, and that she was three months pregnant by McCoy but had

---

[38] Opp'n to Def.'s Mot. for Summ. J. 7, ECF No. 16.

9

her last period only two months earlier in November.[39]  He emphasizes that Henagan told Taylor that she had suffered injuries to her back, neck and ankle in the attack, but the examiner found none.[40]  These inconsistencies were not included in the affidavit of probable cause.[41]

McCoy also complains that Taylor included information in the affidavit that Henagan had not provided her.  Although the affidavit indicated that McCoy fell asleep after the January 26 assault and Henagan left the residence to contact police, Taylor could not explain where she had obtained that information.[42]  It was not in the record of her interview of Henagan.

Taylor maintains that she did not act deliberately or recklessly in drafting and submitting the affidavit of probable cause when she applied for the arrest warrant.[43]  She argues that any omissions and the inclusion of the statement about McCoy's falling asleep were not material to the magistrate's finding of probable cause.[44]  She asserts that Henagan's pregnancy and sexual history, and whether she was eventually able to leave her residence, were "entirely irrelevant to the finding of probable cause to arrest Mr. McCoy for sexual assault and other crimes."[45]

---

[39] *Id.* 9.

[40] *Id.*

[41] Aff. of Prob. Cause.

[42] Taylor Dep. Tr. 72:8-21, ECF 16-1.

[43] Mem. in Supp. of Def.'s Mot. for Summ. J. 10-11, ECF No. 15; Reply in Supp. of Def.'s Mot. for Summ. J. 4, ECF No. 18.

[44] Mem. in Supp. of Def.'s Mot. for Summ. J. 11; Reply in Supp. of Def.'s Mot. for Summ. J. 3.

[45] Mem. in Supp. of Def.'s Mot. for Summ. J. 11.

McCoy does not claim that the affidavit, on its face, failed to establish probable cause. Instead, he claims that Henagan's credibility would have been undermined by including in the affidavit the discrepancies regarding her injuries, pregnancy, and sexual history. But, he does not explain how these discrepancies show that she had not been truthful about the rape. The information provided by Henagan and her photographic identification of McCoy were sufficient for a reasonable officer to believe "that there was a 'substantial chance of criminal activity.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)). Taylor was not required to make accurate credibility determinations or investigate every issue that might suggest McCoy's innocence. *Baker v. McCollan*, 443 U.S. 137, 146 (1979); *Wright*, 409 F.3d at 603.

Comparing the investigation interview of Henagan with Taylor's affidavit shows that Taylor omitted several facts. She did not include the discrepancy in Henagan's statements regarding the length of her pregnancy and the date of her last period, nor the absence of any physical injuries upon examination despite her claimed injuries.

Where a police officer recklessly omits or includes facts in an affidavit of probable cause, the court must "perform [a] literal, word-by-word reconstruction[ ] of [the] challenged affidavit[ ]." *Dempsey*, 834 F.3d at 470 (quoting *Wilson*, 212 F.3d at 789); *see also Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) ("affidavit's false material" should be "set to one side" and its "remaining content" reviewed for sufficiency "to establish probable cause"). "To determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable

11

cause." *Wilson*, 212 F.3d at 789. If the reconstructed affidavit establishes probable cause, summary judgment is appropriate, "for even if there had not been omissions and misrepresentations in [the] presentation to [the] [j]udge" who approved the warrant, the plaintiff would have been arrested. *Id.*

Here, the reconstructed affidavit, with unattributable information struck and previously omitted information underlined, reads as follows:

> The Complainant a twenty-one year old female stated the following in summary to the assigned on 1-27-2014 inside the Special Victims Unit. The Complainant stated that on 1-26-2014 she was inside 234 Widener Street (Phila. Pa.) with her live-in boyfriend Aaron Mccoy (Offender). The Complainant stated that she and the Offender was [sic] in bed togeather [sic] when the Offender asked her to engage in sex with her [sic]. The Complainant told the Offender "No". The Offender then grabbed the Complainant and forced her to engage in oral and vaginal sex with him against her will. ~~The Complainant then told the Assigned that after the assault the Offender fell asleep and the Complainant left the residence and the police were notified.~~ **She told the Assigned that her ankle had to be wrapped and her back and neck were also injured, but the forensic examiner found no signs of injuries.** The Complainant also told the Assigned that she is pregnant and the Offender is the father of her unborn child. **The Complainant told the forensic examiner that she became pregnant in October 2013, but she also reported that her last period was in November 2013 and that she last had sex, anally and with a condom, in September 2013.**

The reconstructed affidavit still establishes probable cause to arrest McCoy. Ignoring the sentence regarding Henagan leaving the residence after McCoy fell asleep and including the inconsistencies regarding her injuries, pregnancy and sexual history, the totality of the facts demonstrate probable cause that McCoy raped Henagan.

The crux of the allegations against McCoy was that he had raped and sexually assaulted Henagan. She may have exaggerated her injuries or may not have sustained

12

any visible injuries. Likewise, she may not have been truthful about her pregnancy. But, Henagan did not claim that she became pregnant as a result of the rape, which occurred months later. Although these facts may have had a bearing on her credibility, her account made out probable cause that McCoy had raped and sexually assaulted her. As reflected in the affidavit, Henagan told Taylor that McCoy "grabbed" her and physically "forced her to engage in oral and vaginal sex with him against her will."[46] This allegation alone, if true, makes out rape and sexual assault.

The conflicting information provided by Henagan does not preclude a finding of probable cause. An officer is not required to make credibility determinations or resolve conflicts in the available information. *Dempsey*, 834 F.3d at 467 (citing *Wright*, 409 F.3d at 603). "The probable cause standard by definition allows for the existence of conflicting, even irreconcilable evidence." *Id.* at 468. A victim's statements are sufficient to make out probable cause unless there is "independent exculpatory evidence or substantial evidence of [a] witness's own unreliability that 'fatally undermines' probable cause otherwise established." *Dempsey*, 834 F.3d at 477-78 (quoting *Wilson*, 212 F.3d at 790).

The information and photographic identification provided by Henagan were sufficient to allow a reasonable officer to determine "that there was a 'substantial chance of criminal activity.'" *Wesby*, 138 S. Ct. at 588 (quoting *Gates*, 462 U.S. at 244 n.13). A victim's reliable identification of her putative attacker is sufficient for probable cause. *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997) (citing *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991); *Grimm*, 932 F.2d at 675), *abrogated on other grounds*, *Curley*, 499 F.3d 199; *see also Grimm*, 932 F.2d at 675 ("When an officer has received

---

[46] Aff. of Prob. Cause.

13

his information from some person—normally the putative victim or an eye witness—who it seems reasonable to believe is telling the truth, he has probable cause.") (quotation omitted). "Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." *Torchinsky*, 942 F.2d at 262 ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker.").

The reconstructed affidavit, based on Henagan's account of the assault, made out probable cause. Even considering the omitted information and excising the information Taylor could not explain how she had obtained, we conclude that no reasonable jury could determine that the affidavit lacked probable cause.[47]

## Conclusion

A reasonable jury could not find an absence of probable cause for McCoy's arrest. Therefore, because McCoy cannot establish the third element of a malicious prosecution cause of action, we shall grant Taylor's motion for summary judgment.

---

[47] Taylor also argues that she did not initiate criminal proceedings against McCoy or act with malice, and that the dismissal of the case against him without prejudice was not a termination in his favor. She also asserts qualified immunity. However, we do not address these arguments because the existence of probable cause for McCoy's arrest alone defeats his claim. *Kossler*, 564 F.3d at 186 & n.2.